IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| LEON BRANDON | PLAINTIFF |
| v. | CIVIL ACTION NO. 1:16-cv-00141-GHD-DAS |
| SHELTER MUTUAL INSURANCE COMPANY and BILL E. MORGAN | DEFENDANTS |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT AND DEFER ANSWER TO COUNTERCLAIM

Presently before the Court is a motion to remand to state court and defer answer to counterclaim [6] filed by Plaintiff Leon Brandon ("Plaintiff"). Upon due consideration, the Court finds that the motion is well taken.

### *I.  Factual and Procedural Background*

On June 23, 2016, Plaintiff Leon Brandon ("Plaintiff") filed a complaint in the Circuit Court of Monroe County, Mississippi, against Defendants Shelter Mutual Insurance Company ("Shelter") and Bill E. Morgan ("Morgan") (collectively, "Defendants") to recover for fire loss and smoke damage to his dwelling and personal property. It is undisputed that Plaintiff purchased an insurance policy from Shelter that provided insurance coverage on his home within the terms, conditions, and exclusions contained in the policy and that the subject policy was in force at the time of the fire. Plaintiff asserts the following claims against Defendants: breach of contract; breach of the warranty of good faith and fair dealing; gross negligence in not providing a timely settlement in Plaintiff's time of loss; willful, wanton, and intentional deception; and bad-faith delay in processing of the claim.

Plaintiff alleges that on or around December 22, 2015, he arrived at his home and discovered smoke billowing inside. Plaintiff further alleges that he called the fire department,

1

members of which arrived on the premises, ensured there was no remaining fire, and vented the dwelling to remove any smoke. Plaintiff submitted a claim to Shelter, claiming that his dwelling and personal property suffered considerable fire and smoke damage to the point that the dwelling was uninhabitable. Plaintiff avers that he has repeatedly contacted Shelter and his Shelter insurance agent, Morgan, concerning his claim, but that as of the date of his complaint, approximately five months after he submitted the claim, Shelter had not submitted payment on the claim.

On August 5, 2016, Shelter timely removed this case to this Court on the basis of diversity jurisdiction and filed an answer, affirmative defenses, and counterclaim for a declaratory judgment [3]. On August 23, 2016, Plaintiff filed the present motion to remand the case to state court and defer answer to counterclaim [6]. Shelter filed a response; Plaintiff filed a reply; and Shelter filed a supplement to its response after seeking and being granted leave to do so.[1] The matter is now ripe for review.

## *II. Standard of Review*

The removal statute provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

A case may be remanded upon a motion filed within thirty days after the filing of the notice of removal on any defect except subject matter jurisdiction, which can be raised at any

---

[1] On February 22, 2017, Plaintiff apparently inadvertently filed an untimely memorandum in support [31] of his motion to remand and defer answer to counterclaim [6]. Plaintiff subsequently filed a motion to withdraw [32] the memorandum, and the Court granted the motion to withdraw in an Order [33] dated February 27, 2017. Thus, the Court did not consider the inadvertently filed memorandum in ruling on the remand motion.

time by any party or *sua sponte* by the Court. *See Wachovia Bank, N.A. v. PICC Prop. & Cas. Co. Ltd.*, 328 F. App'x 946, 947 (5th Cir. 2009); *see also Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

### III. Analysis and Discussion

Shelter can remove the action to this Court on the basis of diversity jurisdiction if this Court would have had original jurisdiction over the action. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1441(a)). Federal diversity jurisdiction requires complete diversity between all plaintiffs and all defendants and an amount in controversy that exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). Shelter, as the removing party seeking to invoke federal diversity jurisdiction, bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

Plaintiff contends that removal is not appropriate because there is lack of complete diversity of citizenship among the parties.[2] It is undisputed that complete diversity exists

---

[2] Plaintiff does not dispute that the jurisdictional amount in controversy is met. On the face of Plaintiff's complaint, he requests relief in the amount of $100,000 for mental anguish; $119,257 in compensatory damages for loss to his home and personal property; an amount to be determined for additional living expense damages; and $5 million in punitive damages.

3

between Plaintiff, a citizen of Mississippi, and Shelter, which is incorporated in and has its principal place of business in Missouri and thus is a citizen of Missouri. However, Plaintiff contends that Morgan's presence as a Defendant destroys complete diversity, as both Plaintiff and Morgan are citizens of Mississippi. Plaintiff argues that Morgan is the agent listed in the subject insurance policy and that he is made a party to this legally binding contract by the language of the subject policy. Plaintiff maintains that Morgan failed to meet his obligation under the insurance contract of offering information to Plaintiff concerning the subject policy. Plaintiff further argues that the allegations that Shelter and Morgan were "apathetic, inattentive, and unsympathetic" support a claim of gross negligence against both Defendants. Plaintiff maintains that Mississippi law imposes a standard of care on insurance agents to use the degree of diligence and care which a reasonably prudent person would exercise in the transaction of his own business, that Plaintiff's allegations in the complaint demonstrate Morgan did not work on Plaintiff's claim, and that this inaction constitutes gross negligence to a degree of malice and reckless disregard for the rights of Plaintiff. Therefore, Plaintiff maintains Morgan is a proper party to this case against whom Plaintiff has alleged a cognizable cause of action and that removal is improper.

Shelter argues that Morgan was improperly joined in order to destroy diversity jurisdiction and thus that Morgan's citizenship should be disregarded in the diversity jurisdiction determination. Shelter further argues that Plaintiff attempts to impose liability upon Morgan merely because he is a Shelter sales agent, and that Mississippi law bars an action for contractual liability by an agent for a disclosed principal or from an agent, as a non-party to the contract, for breach of the duty of good faith and fair dealing with regard to the performance of the contract. Shelter further argues that Plaintiff has not stated a cognizable gross negligence claim against

Morgan because Mississippi law does not allow an action against an insurance adjuster, agent, or other similar entity for simple negligence in connection with his work on a claim. Shelter further argues that Plaintiff fails to allege any facts supporting gross negligence, malice, or reckless disregard for the rights of the insured, Plaintiff. Shelter maintains that Morgan is not a party to the subject insurance contract and had no duty to pay Plaintiff's claim. Therefore, Defendants argue that removal is proper.

In addition, Plaintiff argues that he depended on Morgan's advertising statement on his website that he could rely on him for quality service and that his actions of inactions border on False Information and Advertising as defined in Mississippi Code § 83-5-35. Plaintiff maintains that his allegations support a claim that Morgan failed to act under the terms of an implied contract of fact. Shelter argues in response that this cause of action was not alleged in Plaintiff's complaint, but nonetheless does not establish a reasonable probability of recovery against Morgan, because no such implied contract exists as a matter of law. For purposes of the Court's analysis, the Court disregards Plaintiff's arguments concerning an implied contract with Morgan through his alleged promises on his professional website. As Shelter argues, these allegations were not urged in the complaint and are not supported by the attachments to the complaint. Accordingly, the same are not considered by this Court. With all of the foregoing in mind, the Court examines the issue before it.

"[T]he doctrine that ignores a lack of complete diversity where the plaintiff joins a nondiverse defendant to avoid federal jurisdiction" is known as "improper joinder" in the Fifth Circuit. *Mumfrey*, 719 F.3d at 401 n.14 (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc)). Because Defendants do not contend that the pleadings contain actual fraud, only the second prong is before this Court. " 'Improper joinder can be

5

established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non[ ]diverse party in state court.'" *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Mumfrey*, 719 F.3d at 401). "The test 'is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" *Id.* (quoting *Smallwood*, 385 F.3d at 573).

"First, a court looks at the allegations contained in the complaint." *Id.* (citing *Mumfrey*, 719 F.3d at 401). "If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder." *Id.* (citing *Mumfrey*, 719 F.3d at 401) (citing *Smallwood*, 385 F.3d at 573). "When 'a complaint states a claim that satisfies 12(b)(6), but has "misstated or omitted discrete facts that would determine the propriety of joinder . . .[,] the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."'" *Id.* (citing *Mumfrey*, 719 F.3d at 401) (quoting *Smallwood*, 385 F.3d at 573). " '[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court.'" *Id.* (quoting *Smallwood*, 385 F.3d at 573). "The purpose of the [summary] inquiry is limited to identifying 'the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.'" *Mumphrey*, 719 F.3d at 401 (citing *Smallwood*, 385 F.3d at 573–74). If the Court conducts a summary inquiry, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *See Travis*, 326 F.3d at 648–49. All disputed issues of fact and any ambiguities of state law must be resolved in Plaintiff's favor. *See id.* at 649. " 'The burden of persuasion on

those who claim [improper] joinder is a heavy one.' " *Mumphrey*, 719 F.3d at 401 (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

Based on the foregoing standard, the Court now turns to the allegations in Plaintiff's complaint against Morgan. Plaintiff alleges that he "entered into a written annual insurance contract with the Defendants . . . which provided insurance protection for the Plaintiff's dwelling," and that "Defendants have accepted all payments of the premiums." Pl.'s State-Ct. Compl. [2] ¶ 5. Plaintiff maintains that "Defendants . . . have the duty under the above[-]mentioned insurance policy to cover the Plaintiff for accidental direct physical loss to the covered property of which fire and smoke are included as covered perils." *Id.* ¶ 6. Plaintiff further maintains that "[o]n or around December 22, 2015, he notified the Defendants of the fire loss to the dwelling" and that after Defendants requested certain information from Plaintiff, he "provided the Defendants with the information requested . . . to the best of his knowledge." *Id.* ¶ 8. Plaintiff avers that he submitted to Defendants a repair estimate for the dwelling from a local contractor and a list of the personal property lost in the fire or determined to be unusable, as well as a Proof of Loss for the amount of the property estimate. *Id.* Plaintiff further avers that he "asked the Defendants about his options" under the subject policy and that Defendants told him they would check on that and get back with him. *Id.* Plaintiff maintains that he talked by phone to Defendants, including Morgan, "at least ten times in a thirty[-]day period after the fire," during which time Defendants "did not discuss with the Plaintiff the process of filing an Additional Living Expense claim although the Defendants were well aware of the Plaintiff's need for a place for him and his daughter to live due to the condition of the damaged dwelling." *Id.* Plaintiff maintains that Defendants have "unreasonabl[y] and arbitrar[ily] delay[ed] . . . the settlement of his fire loss," though he has provided the requested documentation and information

and has made numerous phone calls requesting the status of his claim and when he could expect payment. *Id.* ¶ 9. Plaintiff further alleges that Defendants "advised the Plaintiff the loss was being processed, and a settlement would be offered as soon as they could." *Id.*

Plaintiff maintains that he "pursued assistance from his agent, [Morgan]," including "ask[ing] [Morgan] what more he could do in order to facilitate getting his home repaired," but that Morgan was "indifferent," "apathetic, inattentive, and unsympathetic" and did not do anything to help except to give Plaintiff a phone number to call of "the same people who were ignoring his pleas for help in the first place." *Id.* ¶¶ 10–11, 13. Plaintiff further maintains that Defendants deceived him in a willful, wanton, and intentional way. *Id.* ¶ 14. Plaintiff cites Mississippi Code § 83-5-5 in support of his allegations that Defendants have accepted payments from Plaintiff on the policy but have not fulfilled their part of the contract. *Id.* ¶ 12. Plaintiff alleges that due to Defendants' "unreasonable and unwarranted delay in the settlement of his fire claim," Plaintiff has been unable to begin repairing his home; that Plaintiff "has suffered financially in the loss of his home" and the "inconvenience and disruption of a suitable home for him and his daughter to live"; and that Plaintiff's "health has suffered due to mental anguish over worry and concern." *Id.* ¶ 15. Plaintiff attaches to his complaint a purported copy of the subject policy, which lists Morgan as the agent and provides that in the case of an accident covered under the policy, Plaintiff must "[n]otify us or our agent as soon as possible." Policy [2-1] at 6. The policy also provides that any notice required by the policy may be given "to an authorized agent within this state," *id.* at 6–7, and mentions that the insurance premium may be "payable directly to us or our agent . . . .," *id.* at 7.[3]

---

[3] The subject policy also apparently includes an instruction to contact the agent for any information needed about the policy, though this particular page was not included in the pages of the policy attached to Plaintiff's complaint. *See* Policy [4] at 4.

8

Mississippi law concerning claims against insurance agents is complex and intricate. Under Mississippi law, " '[a]n insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business.' " *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (Miss. 2010) (quoting *McKinnon v. Batte*, 485 So. 2d 295, 297 (Miss. 1986) (other citations omitted)). Further, "Mississippi law requires insurance companies <u>and their agents</u> to adhere to the standard of care for their profession, and <u>they</u> will be liable for any breach of this standard of care which proximately causes damages." *Id.* at 1168 (emphases added). In *Mladineo*, the Mississippi Supreme Court held that "the plaintiffs' negligence claim against the insurance agent could proceed because the plaintiffs may have been able to show that the agent's alleged misrepresentation regarding the plaintiffs' need to purchase flood insurance breached the agent's professional duty and proximately caused any damage to the [plaintiffs]." *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1183 n.7 (Miss. 2014) (citing *Mladineo*, 52 So. 3d at 1163). The court stated in *Mladineo*: "[W]e do not find that insurance agents in Mississippi have an affirmative duty to advise buyers regarding their coverage needs," but "if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so." *Id.* Thus, in that case, the Mississippi Supreme Court recognized a negligence claim against the insurance agent.

However, in the earlier, often-cited case *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 777 (Miss. 2004), the Mississippi Supreme Court stated: "[A]n insurance adjuster, agent[,] or other similar entity may not be held independently liable for simple negligence in connection its work on a claim" unless "its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured." *Id.* at 785; *see Berry v. Hardwick*, 152 F. App'x 371, 375 (5th Cir. 2005) (per curiam) (relying on

*Jeffcoat* in holding that "insurance agents . . . may not be liable under Mississippi law for improper acts in adjusting a claim unless [plaintiff] demonstrates that those acts amount to 'gross negligence, malice, or reckless disregard for the rights of the insured' "). "Reckless is defined as careless, heedless, inattentive; indifferent to consequences. For conduct to be reckless it must be such as to evince disregard of, or indifference to, consequences." *Chapman v. Coca Cola Bottling Co.*, 180 So. 3d 676, 690 (Miss. Ct. App.), *reh'g denied* (Aug. 18, 2015), *cert. denied sub nom. Chapman v. Coca-Cola Bottling Co.*, 179 So. 3d 1137 (Miss. 2015) (internal quotation marks and citation omitted).

"Mississippi law imposes a duty upon insurers to conduct a reasonably prompt investigation of all relevant facts." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996) (internal quotation marks and citation omitted); *see* Miss. Code Ann. § 71-3-37(1) ("[c]ompensation . . . shall be paid . . . promptly."). "An unreasonable delay in resolving a claim can qualify as recoverable bad faith." *AmFed Cos., LLC v. Jordan*, 34 So. 3d 1177, 1183 (Miss. Ct. App. 2009) (citing *Travelers Indem. Co. v. Wetherbee*, 368 So. 2d 829, 835 (Miss. 1979)). In such claims, courts evaluate the insurer's conduct in handling the investigation and payment of claims. *See Caldwell*, 686 So. 2d at 1096. In *AmFed Cos., LLC*, the Mississippi Court of Appeals held that the evidence supported that a worker's compensation insurance agent and its employees, who were acting within the scope of their employment as agent for the insurance carrier, had unreasonably delayed processing of lump-sum benefits and that the unreasonable delay "constituted a willful and intentional or malicious wrong." 34 So. 3d at 1185, 1187. However, in *Jeffcoat*, the Mississippi Supreme Court held that an insurance adjuster's ten-month delay in payment of benefits of the plaintiff's claim was, "at the most, negligent," but the court so held after considering all the evidence and testimony that had been presented at trial. *See* 887

10

So. 2d at 783–86. In accord with this decision, the Fifth Circuit held in *Berry* that plaintiffs had failed to state a claim for gross negligence under Mississippi law against their insurance agent when they alleged they had reported the loss and destruction of their car to the agent, who had then become unresponsive to their contact attempts and caused bad faith delay of the processing of their claim. *See Berry*, 152 F. App'x at 372–73, 375. In *Travelers Indemnity Co.*, the Mississippi Supreme Court "affirmed a punitive damage instruction where the insurer withheld payment for a period of eight months, despite being warned that the insured was suffering economically . . . ." *Caldwell*, 686 So. 2d at 1098 (citing *Travelers Indem. Co.*, 368 So. 2d at 835). In this Court's opinion, these cases highlight the complexity involved in determining whether a plaintiff has made out a claim for negligence against an insurance agent and seemingly indicate that the determination depends on the facts and evidence in the particular case.

In the case *sub judice*, Plaintiff alleges that Morgan, as an agent for Shelter, directly participated in the commission of breach of contract; breach of the warranty of good faith and fair dealing; gross negligence in not providing a timely settlement in Plaintiff's time of loss; willful, wanton, and intentional deception; and bad-faith ten-month delay in processing of the claim—all while within the scope of his employment as an agent of Shelter. Shelter bears the heavy burden of demonstrating that there is no possibility of recovery against Morgan. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Shelter has failed to meet this heavy burden, particularly given the complexity and intricacy of this area of Mississippi law. This Court cannot conclude that Plaintiff has no reasonable basis of recovery against Morgan under Mississippi law.

Further, a summary inquiry appropriately "limited to identifying the presence of discrete and undisputed facts that would preclude [P]laintiff's recovery against [Morgan]," *see Mumfrey*,

719 F.3d at 401, does not reveal that Plaintiff has no reasonable possibility of recovery against Morgan. Plaintiff attaches to his reply an excerpt of his deposition transcript, wherein Plaintiff testified that he repeatedly contacted Morgan, who did not "seem to answer [his] calls"; told him to call another agent in Jackson, Mississippi; and said he would "get back with [Plaintiff]," but "never did." Pl.'s Dep. [27-1] at 3–4. On the other hand, Shelter attaches to its supplement the declaration of Morgan, who states he was not involved in the handling or determination of Plaintiff's claim, did not have any information about the status of the claim, and told Plaintiff to contact the claims adjuster assigned to his claim. Morgan's Decl. [30-1] at 1. A review of these two documents reveals the following undisputed facts: Plaintiff contacted Morgan about his claim, and Morgan told him to contact another individual with Shelter about his claim. These undisputed facts do not preclude the reasonable possibility of recovery against Morgan.

On a remand motion, it is not proper for the Court to weigh evidence on the merits. Rather, as stated above, in ruling on a remand motion, the Court must look to the allegations of Plaintiff's complaint and may perform a summary inquiry limited to identifying undisputed facts that preclude recovery against Morgan. In viewing the complaint and the summary-type evidence, the Court finds that Shelter has not shown that Plaintiff has no reasonable possibility of recovery against Morgan, and thus Shelter has not shown that Morgan was improperly joined. Therefore, the joinder of Morgan destroys complete diversity, removal jurisdiction is improper, and remand is warranted.

*IV. Conclusion*

In sum, Plaintiff's motion to remand to state court and defer answer to counterclaim [6] is GRANTED based on lack of complete diversity of citizenship; Plaintiff's request for attorney's fees incurred in filing the present motion to remand is not well taken and is thus DENIED; the

matter shall be REMANDED to the Circuit Court of Monroe County, Mississippi; and this case is CLOSED.

An order in accordance with this opinion shall issue this day.

THIS, the 27th day of February, 2017.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE